*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CITY OF DETROIT,

      Plaintiff/Counterdefendant-Appellant,

UNPUBLISHED
May 14, 2020

v

ROBERT JAMES GOLF MANAGEMENT, LLC,
doing business as VARGO GOLF DETROIT, also
known as VARGO GOLF COMPANY, LLC, also
known as VARGO GOLF GROUP, LLC, and also
known as VARGO GOLF HAMPTON,

      Defendants/Counterplaintiffs-
      Appellees.

No. 346798
Wayne Circuit Court
LC No. 18-004487-CK

Before: MURRAY, C.J., and RONAYNE KRAUSE and TUKEL, JJ.

PER CURIAM.

Plaintiff/counterdefendant, City of Detroit (hereinafter, "the City"), appeals as of right the trial court's order denying its motion for summary disposition, as counter-defendant, against defendants/counterplaintiff Robert James Golf Management, LLC, doing business as Vargo Golf Detroit, also known as Vargo Golf Company, LLC, Vargo Golf Group, LLC, and Vargo Golf Hampton[1] (together "the Golf companies"). The City, as counter-defendant, had opposed summary disposition against it on the ground that it was protected from the Golf companies' suit by the doctrine of governmental immunity. The City argues on appeal, as it did below, that the trial court erred by finding that governmental immunity was inapplicable; the trial court ruled that the City was engaged in a proprietary function through the operation of public golf courses and, therefore, that the City was not entitled to governmental immunity for its allegedly tortious conduct. To the extent this Court has jurisdiction over the City's appeal, we agree that the trial court erred by denying the City's motion for summary disposition as to the Golf companies' tortious interference, misrepresentation, silent fraud, and business defamation claims. But we

---

[1] To ensure clarity, we note that Vargo Golf Detroit is also known as each of Vargo Golf Company, LLC, Vargo Golf Group, LLC, and Vargo Golf Hampton.

disagree with the City's argument that the trial court erred by denying its motion for summary disposition as to the Golf companies' unjust enrichment and conversion claims. And we dismiss the City's arguments brought under MCR 2.116(C)(8) because we do not have jurisdiction over an interlocutory appeal from an order issued under that rule. This appeal is being decided without oral argument pursuant to MCR 7.214(E)(1).

## I. UNDERLYING FACTS

In 2010, the City awarded the management and maintenance contracts for Chandler Park Golf Course, Palmer Park Golf Course, Rouge Park Golf Course, and Rackham Golf Course (together, "the golf courses") to the Golf companies. Before 2010, the City contracted with American Golf Corporation for management of the golf courses. After the 2010 management contract was awarded to the Golf companies, the Golf companies and American Golf Corporation entered into a purchase agreement under which the Golf companies purchased, for $125,000, items from American Golf Corporation related to managing and running the golf courses. Between 2010 and 2017 no issues related to the golf courses arose between the City and the Golf companies. In 2017, the City and the Golf companies entered into a management contract for the Golf companies to manage the golf courses from March 21, 2017 to March 21, 2018.

In relevant part, the 2017 contract required the Golf companies to manage and operate the golf courses at their own expense. The City would be responsible for all "repairs of $5,000.00 or more to buildings, parking lots and water mains," but the Golf companies were responsible for all other repairs. Finally, the 2017 contract required the Golf companies to pay the City based on the "Gross Receipts" the golf courses generated in 2017.

Before the 2017 contract expired, on February 6, 2018, the City changed the locks at Rouge Park and Chandler Park. The City claimed that this was done in error and on February 9, 2018, provided the Golf companies with keys to access Rouge Park and Chandler Park. In March 2018, the City awarded a contract for the future management of the golf courses to Signet Golf Associates.[2]

The 2017 contract expired on March 22, 2018, and at that time the Golf companies no longer had a contract with the City to manage the golf courses. At an unspecified time before April 6, 2018, the Golf companies removed numerous items from the golf courses including ball washers, tee signs, irrigation computers, picnic tables, benches, and refrigerators. According to the City, the Golf companies also sold season passes for the 2018 golf season but did not give the City any revenue from those sales. On April 6, 2018, the City sent a demand letter to the Golf companies demanding the return of "all equipment, supplies, signage," and other items removed

---

[2] On October 1, 2018, after the 2017 contract had expired, a "request to close investigation memorandum" from the City of Detroit Office of Inspector General found that there had been a conflict of interest in the bidding process for management of the golf courses. Specifically, the City of Detroit found that there was a connection between Sirius Golf Advisors, a subsidiary of Signet Golf Associates, and one of the participants in a 2017 National Golf Foundation Consulting, Inc. feasibility study of the golf courses.

from the golf courses as well as an accounting for all 2018 season passes sold, and compensation for those passes.

The Golf companies responded to the City's demand letter on April 20, 2018. In their response letter, the Golf companies claimed that the only property they removed from the golf courses belonged to them. The Golf companies additionally claimed that the City was still in possession of many items belonging to the Golf companies including picnic tables, tee signs, safes, office chairs, and desks. The Golf companies demanded the return of their property and stated that the 2018 season passes they sold would not be effective at the golf courses because the Golf companies no longer managed the golf courses.

The City then filed a complaint and the Golf companies filed a countercomplaint. Only the Golf companies' countercomplaint is at issue on appeal. The Golf companies alleged that, because the City retained custody of property owned by the Golf companies, the City was unjustly enriched by its actions and that the City's actions additionally constituted statutory and common law conversion, tortious interference with a contract, misrepresentation and silent fraud, and business defamation.

In response, the City moved for summary disposition under MCR 2.116(C)(7), (8), and (10), arguing that the Golf companies' claims were barred by governmental immunity and that the Golf companies failed to plead in avoidance of governmental immunity. In response, the Golf companies argued that the City was not entitled to governmental immunity because it was engaged in a proprietary function through its ownership of the golf courses. The trial court denied the City's motion for summary disposition. This appeal followed.

## II. ANALYSIS

This Court does not have jurisdiction over the order denying the City's motion for summary disposition under MCR 2.116(C)(8) because it was not a final order. This Court does, however, have jurisdiction over the order denying the City's motion for summary disposition under MCR 2.116(C)(7) and (10), pursuant to MCR 7.202(6)(a)(*v*). Because there are disputes of material fact as to the Golf companies' conversion and unjust enrichment claims, the trial court did not err in denying the City's motion for summary disposition under MCR 2.116(C)(7) and (10) as to those claims. Finally, the trial court erred by denying summary disposition as to the Golf companies' remaining claims because the Golf companies failed to plead in avoidance of governmental immunity.

### A. STANDARD OF REVIEW

A trial court's summary disposition ruling is reviewed de novo. *Walters v Nadell*, 481 Mich 377, 381; 751 NW2d 431 (2008).

> A party may support a motion under MCR 2.116(C)(7) by affidavits, depositions, admissions, or other documentary evidence. If such material is submitted, it must be considered. MCR 2.116(G)(5). Moreover, the substance or content of the supporting proofs must be admissible in evidence . . . . Unlike a motion under subsection (C)(10), a movant under MCR 2.116(C)(7) is not required

to file supportive material, and the opposing party need not reply with supportive material. The contents of the complaint are accepted as true unless contradicted by documentation submitted by the movant. [*Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999) (quotation marks and citations omitted).]

Furthermore,

[w]e must consider the documentary evidence in a light most favorable to the nonmoving party for purposes of MCR 2.116(C)(7). If there is no factual dispute, whether a plaintiff's claim is barred under a principle set forth in MCR 2.116(C)(7) is a question of law for the court to decide. But when a relevant factual dispute does exist, summary disposition is not appropriate. [*Moraccini v City of Sterling Hts*, 296 Mich App 387, 391; 822 NW2d 799 (2012) (citations and quotation marks omitted).]

A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 205-206; 815 NW2d 412 (2012). This Court reviews a motion brought under MCR 2.116(C)(10) "by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018). Summary disposition "is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id.* "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). "Only the substantively admissible evidence actually proffered may be considered." *1300 LaFayette East Coop, Inc v Savoy*, 284 Mich App 522, 525; 773 NW2d 57 (2009) (quotation marks and citation omitted). "Circumstantial evidence can be sufficient to establish a genuine issue of material fact, but mere conjecture or speculation is insufficient." *McNeill-Marks v Midmichigan Med Ctr-Gratiot*, 316 Mich App 1, 16; 891 NW2d 528 (2016).

The moving party has the initial burden to support its claim with documentary evidence but, once the moving party has met this burden, the burden then shifts to the nonmoving party to establish that a genuine issue of material fact exists. *AFSCME v Detroit*, 267 Mich App 255, 261; 704 NW2d 712 (2005). Additionally, if the moving party asserts that the nonmovant lacks evidence to support an essential element of one of his or her claims, the burden shifts to the nonmovant to present such evidence. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 7; 890 NW2d 344 (2016).

Finally, "[i]ssues of statutory interpretation are reviewed de novo." *City of Riverview v Sibley Limestone*, 270 Mich App 627, 630; 716 NW2d 615 (2006). "Statutory provisions must be read in the context of the entire act, giving every word its plain and ordinary meaning. When the language is clear and unambiguous, we will apply the statute as written and judicial construction is not permitted." *Driver v Naini*, 490 Mich 239, 246-247; 802 NW2d 311 (2011). Similarly, "questions involving the proper interpretation of a contract or the legal effect of a contractual clause are also reviewed de novo." *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).

## B. JURISDICTIONAL ISSUES

The City claims that this Court has jurisdiction over this appeal because the trial court's denial of its motion for summary disposition was a final order. The trial court's order, however, explicitly stated that it was *not* a final order and that it did not close this case. Consequently, despite the Golf companies' failure to file a brief on appeal in this case, this Court must determine whether it has jurisdiction over the City's appeal. See *Walsh v Taylor*, 263 Mich App 618, 622; 689 NW2d 506 (2004) ("The question of jurisdiction is always within the scope of this Court's review[.]"). This Court's jurisdiction is based entirely in statute and is limited to final orders and judgments. MCL 600.308; *Walsh*, 263 Mich App at 622.

MCR 7.203(A) establishes the jurisdiction of this Court and addresses appeals as of right:

(A) Appeal of Right. The court has jurisdiction of an appeal of right filed by an aggrieved party from the following:

> (1) A final judgment or final order of the circuit court, or court of claims, as defined in MCR 7.202(6), except a judgment or order of the circuit court
>
> > (a) on appeal from any other court or tribunal;
> >
> > (b) in a criminal case in which the conviction is based on a plea of guilty or nolo contendere;

An appeal from an order described in MCR 7.202(6)(a)(*iii*)-(*v*) is limited to the portion of the order with respect to which there is an appeal of right.

MCR 7.202(6)(a)(*v*), in turn, defines what establishes a "final order" in a case involving governmental immunity:

(6) "final judgment" or "final order" means:

> (a) In a civil case,

\* \* \*

> > (*v*) an order denying governmental immunity to a governmental party, including a governmental agency, official, or employee under MCR 2.116(C)(7) or an order denying a motion for summary disposition under MCR 2.116(C)(10) based on a claim of governmental immunity[.]

"Court rules are interpreted using the same principles that govern statutory interpretation. The Court gives the language of court rules their 'plain and ordinary meaning.' " *Lamkin v Engram*, 295 Mich App 701, 709; 815 NW2d 793 (2012) (citation omitted). The City moved for summary disposition under MCR 2.116(C)(7), (8), and (10). Under MCR 7.203(A), "An appeal from an order described in MCR 7.202(6)(a)(*iii*)-(*v*) *is limited to the portion of the order with respect to which there is an appeal of right*." (Emphasis added). MCR 7.202(6)(a)(*v*) in turn only

-5-

grants this Court jurisdiction over an order denying a motion for summary disposition brought under MCR 2.116(C)(7) or (10) on governmental immunity grounds, because such orders are final orders. MCR 7.202(6)(a)(*v*) does not, however, establish that denial of a motion for summary disposition brought under MCR 2.116(C)(8) based on a claim of governmental immunity is a final order. Thus, this Court has jurisdiction over the City's MCR 2.116(C)(7) and (10) claims, but it does not have jurisdiction over the City's appeal of the order denying its motion under MCR 2.116(C)(8). See MCR 7.202(A); MCR 7.203(6). Consequently, we dismiss the portion of the City's appeal relating to the denial of its motion for summary disposition under MCR 2.116(C)(8).

## C. DISPUTE OF MATERIAL FACT

The trial court properly denied the City's motion for summary disposition as to the Golf companies' statutory conversion and unjust enrichment claims because there are disputes of material fact relating to those claims. See *Wright v Genesee Co*, 504 Mich 410, 414; 934 NW2d 805 (2019) (recognizing unjust enrichment is not a tort). There are no disputes of material fact relating to the Golf companies' remaining claims.

The clearest dispute of material fact in this case arises out of the dispute between the City and the Golf companies over who actually owns the property at issue in this case. The Golf companies claim that they actually own property at the golf courses that the City refuses to return to them. In contrast, the City argues that it actually owns the property in question. The only evidence offered by either party tending to prove who owns what property is the 2010 purchase agreement; but the parties have thus far failed to specifically identify the property at issue in this case in such a way that it can be identified and compared to the property in the purchase agreement. Thus, the parties dispute the material fact of who owns the property which the Golf companies allege the City unjustly possesses.[3] As such, the trial court did not err by denying the City's motion for summary disposition as to the Golf companies' conversion and unjust enrichment claims because both claims are based on the City allegedly having possession of and deriving benefit from property belonging to the Golf companies.

The Golf companies additionally alleged that the City awarded the 2018 golf course management contract to Signet Golf Associates despite a conflict of interest in the bidding process, and that statements made by the City harmed the Golf companies' business reputations. In their brief in response to the City's motion for summary disposition, the Golf companies also asserted that the City had retained a marketing and business consulting firm regarding its operation of the golf courses. The City did not respond to these allegations, as the only facts it disputed related to ownership of the contested property. As such, there is not, strictly speaking, any raised any dispute of material fact as to the Golf companies' tortious interference, misrepresentation, silent fraud, and business defamation claims, because ownership or possession of property is not an element of any of these claims. See, e.g., *Health Call of Detroit v Atrium Home & Health Care Servs, Inc*, 268 Mich App 83, 89-90; 706 NW2d 843 (2005) (stating the elements for tortious interference); *M&D, Inc v WB McConkey*, 231 Mich App 22, 27; 585 NW2d 33 (1998) (stating the elements for fraud);

___

[3] The Golf companies' unjust enrichment claim is based on the City taking possession of and using the Golf companies' property, not over any claimed breach of the 2017 contract by the City.

*Northland Wheels Roller Skating Ctr, Inc v Detroit Free Press, Inc*, 213 Mich App 317, 328; 539 NW2d 774 (1995) (stating the elements for defamation). However, as we discuss below, these claims are subject to the GTLA.

## D. THE GTLA'S APPLICATION TO THE GOLF COMPANIES' CLAIMS

The GTLA applies to the Golf companies' remaining claims. Under the GTLA governmental agencies are generally granted immunity from tort liability:

> Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided in this act, this act does not modify or restrict the immunity of the state from tort liability as it existed before July 1, 1965, which immunity is affirmed. [MCL 691.1407(1).]

Consequently, governmental agencies are immune from all tort liability unless an exception to the GTLA applies. See, e.g., MCL 691.1413 (establishing the proprietary function exception). By its very nature, however, the GTLA only grants immunity to governmental agencies for torts. See MCL 691.1407.

The Golf companies' common law conversion, tortious interference, misrepresentation, silent fraud, and business defamation claims all sound in tort. See, e.g., *Magley v M & W Inc*, 325 Mich App 307, 314-315; 926 NW2d 1 (2018) ("Conversion is an intentional tort in the sense that the converter's actions are willful") (citation and quotation marks omitted); see *Knight Enterprises v RPF Oil Co*, 299 Mich App 275, 280; 829 NW2d 345 (2013) ("By definition, tortious interference with a contract is an intentional tort."); *Hord v Environmental Research Institute of Mich*, 463 Mich 399, 411; 617 NW2d 543 (2000) (characterizing misrepresentation as a tort); *Huron Tool & Engineering Co v Precision Consulting Servs, Inc*, 209 Mich App 365, 370; 532 NW2d 541 (1995) (characterizing fraud as a tort); *Kollenberg v Ramirez*, 127 Mich App 345, 353; 339 NW2d 176 (1983)[4] (characterizing defamation as a tort). As such, the GTLA applies to these claims. See MCL 691.1407(1). Therefore, the City is immune to liability for these claims unless an exception applies.

## E. REQUIREMENT OF PLEADING IN AVOIDANCE OF GOVERNMENTAL IMMUNITY

As a general rule, governmental entities, such as the City, are entitled to immunity from tort liability when they are engaged in a governmental function. MCL 491.1407(1). The Golf companies have not contested at the trial court level or now on appeal that the City was engaged in a governmental function when contracting with the Golf companies for the management and operation of the golf courses. As such, we will not address that specific issue. "A plaintiff pleads in avoidance of governmental immunity by stating a claim that fits within a statutory exception or by pleading facts that demonstrate that the alleged tort occurred during the exercise or discharge

---

[4] "Although cases decided before November 1, 1990, are not binding precedent, MCR 7.215(J)(1), they nevertheless can be considered persuasive authority." *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012) (citation omitted).

of a nongovernmental or proprietary function." *Id*. at 204. The claims at issue in this case were brought by the Golf companies as counterplaintiffs. Consequently, the Golf companies must plead in avoidance of governmental immunity. See *id*. at 194, 204.

The Golf companies failed to even mention governmental immunity in their complaint. In particular, the Golf Companies failed to plead anything tending to show that the City was engaged in an activity for pecuniary profit. See *Coleman v Kootsillas*, 456 Mich 615, 621; 575 NW2d 527 (1998) (establishing the requirements for the proprietary function exception to governmental immunity). Accordingly, the Golf companies necessarily failed to plead in avoidance of governmental immunity. Thus, because there were no disputes of material fact as to the Golf companies' tortious interference, misrepresentation, silent fraud, and business defamation claims, the trial court erred by denying the City's motion for summary disposition of those claims.

As noted, the Golf companies asserted in a brief that the City's retention of a marketing and business consulting firm showed that the City was "acting as a private company in trying to manage its golf courses for profit." A brief is not a pleading. MCR 2.110(A). Therefore, the above assertion does not affect our conclusion that the Golf companies failed to plead in avoidance of governmental immunity. However, because the Golf companies raised an argument in the trial court that the City allegedly operated the golf courses for pecuniary profit, nothing in this opinion should be construed as precluding the Golf companies from moving to amend their complaint on remand. See *Mack v City of Detroit*, 467 Mich 186, 203 n 20; 649 NW2d 47 (2002); *Yono v Dep't of Transp (On Rem)*, 306 Mich App 671, 685; 858 NW2d 128 (2014), rev'd on other grounds 499 Mich 636 (2016). We express no opinion as to what conclusions should be drawn from the Golf companies' asserted evidence or whether any such motion should be granted; and we impose no restrictions upon the trial court's discretion to entertain or decide any such motion, if made.

### III. CONCLUSION

We affirm the trial court's denial of the City's motion for summary disposition as to the Golf companies' unjust enrichment and conversion, but we reverse the trial court's denial of the City's motion for summary disposition as to the Golf companies' tortious interference, misrepresentation, silent fraud, and business defamation claims. We remand for proceedings consistent with this opinion. We do not retain jurisdiction. No costs, no party having prevailed in full. MCR 7.219(A).

/s/ Christopher M. Murray
/s/ Amy Ronayne Krause
/s/ Jonathan Tukel